IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SMALL BUSINESS FINANCIAL SOLUTIONS, LLC | : |  |
| v. | : | Civil Action No. DKC 22-1383 |
| CAVALRY, LLC d/b/a CNC Property Management, et al. | : |  |

**MEMORANDUM OPINION**

Pending and ready for resolution in this breach of contract case is the motion to dismiss counterclaims and to strike affirmative defenses filed by Plaintiff Small Business Financial Solutions, LLC ("SBFS"). (ECF No. 20). The issues have been briefed and the court now rules, no hearing being necessary. Local Rule 105.6. Because the parties' Loan Agreement cannot be usurious under Maryland law, SBFS' motion to dismiss Defendants' counterclaims will be granted as to Counts II, III, and IV. As to Count I—which seeks declaratory relief—SBFS' motion to dismiss will be construed as a cross-motion for a declaration, and the court will declare that the Loan Agreement cannot be usurious under Maryland law. SBFS' motion to strike Defendants' affirmative defenses will also be granted because Defendants' usury defense is legally insufficient and because the remaining defenses are insufficiently pled under Rules 8 and 9 of the Federal Rules of Civil Procedure.

## I.    Background

In March 2021, Plaintiff SBFS made a $127,000 loan to Defendant Cavalry, LLC. (ECF No. 3-1).[1] Defendant Yoel Bochner served as a guarantor on the loan. (ECF No. 3-1, at 11-12). Under the Loan Agreement, Cavalry was required to pay back the loan plus $38,100 in interest through 180 payments "due each business day beginning one day before the funds [we]re wired to [Cavalry's] account." (ECF No. 3-1, at 2). The Agreement requires that the loan "be used for business purposes only," and that Defendants cannot use the loan "for personal, family or household purposes." *Id.* The Agreement also states that "the laws of the State of Maryland" "shall . . . govern[]" "this Agreement, all transactions it contemplates, the entire relationship between the parties, and all Claims . . . whether such Claims are based in tort, contract or arise under statute or in equity." (ECF No. 3-1, at 7).

---

[1] When considering a motion to dismiss, a court must construe the facts "in the light most favorable to the nonmoving party" and take as true all factual allegations that party has made. *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). The same presumptions apply where a court is considering a motion to strike. *See Kantsevoy v. LumenR, LLC*, 301 F.Supp.3d 577, 611 (D.Md. 2018) ("[W]hen reviewing a motion to strike, the court must view the pleading under attack in a light most favorable to the pleader.") (internal citation omitted); *Hubbard v. Allied Van Lines*, 540 F.2d 1224, 1230 (4th Cir. 1976) (nonmoving party's factual allegations "must be accepted as true in considering . . . [a] motion to strike"). Because this case involves a motion to dismiss a counterclaim and to strike affirmative defenses, Defendants are the nonmoving party and all facts listed here are undisputed and are construed in the light most favorable to Defendants.

Several months after the agreement was signed, Cavalry and Mr. Bochner sued SBFS in New York state court, alleging that the Loan Agreement violated New York usury laws and claiming that SBFS committed fraud "by disguising the usurious interest rate in the Agreement as. . . a legal rate." (ECF No. 20-3, at 3, 5).[2] SBFS moved to dismiss the complaint, arguing that the New York court lacked personal jurisdiction over SBFS and that the Agreement itself designates Maryland as the proper forum for legal disputes. (ECF No. 20-3, at 3). In January of 2022, the New York state court granted the motion to dismiss. Before concluding that it lacked personal jurisdiction, the court first noted that it was "not convinced" by Cavalry's fraud arguments, and then observed that "[t]he case law . . . does not suggest that the interest rate on the subject loan was usurious." (ECF No. 20-3, at 5-6).

Before the New York State Court issued that opinion, SBFS sued Cavalry and Mr. Bochner in the Circuit Court for Montgomery County. (ECF No. 3). SBFS' Complaint alleged that Defendants had failed to make payments under the Loan Agreement and demanded judgment against Defendants for $138,500.33. (ECF No. 3, at 2).

---

[2] In ruling on a motion to dismiss, a court may take judicial notice of "matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The New York state court opinion—attached to SBFS' motion to dismiss, (ECF No. 20-3)—is publicly available, *see Cavalry, LLC et al. v. SBFS Financial Solutions, Inc.*, Index No. EF003083-2021 (N.Y. Sup. Ct. Jan. 5, 2022). Defendants do not dispute its authenticity. Thus, the court takes judicial notice of that opinion.

Defendants removed the case to this court.  (ECF No. 1).  They then filed an Answer which raised eight affirmative defenses (ECF No. 13), and asserted a four-count Counterclaim, (ECF No. 14). Neither the Answer nor the Counterclaim dispute that Defendants signed the Loan Agreement.  Rather, Defendants themselves allege that they "entered into a loan agreement" with SBFS, and that the Agreement attached to SBFS' complaint is the contract Defendants signed.  (ECF No. 14, at 1).  The Answer and the Counterclaim both assert that the Loan Agreement violates usury laws in Maryland and New York, and that the Agreement is invalid and unenforceable. (ECF Nos. 13, 14).  SBFS moved to dismiss the Counterclaim and to strike Defendants' first five affirmative defenses.  (ECF No. 20). Defendants responded, (ECF No. 22), and SBFS replied, (ECF No. 23).

## II.  Standard of Review

In considering a motion to dismiss a counterclaim, the court applies the same standard of review that would be applied to a Rule 12(b)(6) motion to dismiss a complaint.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  Thus, a motion to dismiss in this context tests the sufficiency of the counterclaim.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in [the counter-plaintiff's]

4

favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).  A counterclaim must satisfy the standard of Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  A Rule 8(a)(2) "showing" requires more than "a blanket assertion[] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action[.]"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged."  *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which gives the court discretion to "strike from a pleading an insufficient defense."  Rule 12(f) motions are "viewed with disfavor by the federal courts and are infrequently granted" because "striking a portion of a pleading is a drastic remedy" that is "often . . . sought by the movant simply as a dilatory or harassing tactic."  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380 (3rd ed. Apr. 2022) ("*Wright & Miller*").  Nevertheless, a Rule 12(f) motion to strike a defense as insufficient is the "appropriate tool when the parties disagree only on the legal implications to be drawn from

uncontroverted facts." *Wright & Miller* § 1381.  A defense may also be stricken when it fails to meet the applicable pleading standards under Rules 8 and 9, including when a defense is "plead[] with so little detail that [it] fail[s] to provide sufficient notice to the opposing party." *Wright & Miller* § 1380.

## III. Analysis

### A.   Motion to dismiss counterclaim

Counts II, III, and IV of Defendants' counterclaim rest on the assertion that the loan contract is invalid because it includes an interest rate that is "usurious" under Maryland and New York law.  (ECF No. 14, at 2). Count I requests a declaratory judgment "that the Agreement is usurious and unenforceable."  (ECF No. 14, at 2).[3] As explained below, unique rules govern a motion to dismiss a declaratory judgment request.

---

[3] In Count I, Defendants seek a declaration that the Loan Agreement is "usurious and unenforceable" because it includes an interest rate that exceeds the maximum rate allowed under Maryland and New York's usury laws.  (ECF No. 14, at 2).  In Count II, Defendants ask the court to "enjoin[]" SBFS "from its unlawful conduct" based on the "usurious and unenforceable nature of the Agreement."  (ECF No. 14, at 3).  In Count III, Defendants claim that SBFS is liable for fraud because it "represented to [Defendants] that [they] would pay a legal interest rate on the loan."  (ECF No. 14, at 3).  And in Count IV, Defendants "re-allege" the preceding paragraphs regarding usury and claim that SBFS "has been unjustly enriched by the collection of money" under a purportedly "illegal and unenforceable" contract.  (ECF No. 14, at 3).

### 1.   Counts II, III, and IV

Counts II, III, and IV hinge on Defendants' usury arguments. Thus, if the loan agreement's interest rate is not usurious under the laws of the applicable state, all three counts must be dismissed.

Pursuant to the contract itself, Maryland law applies, making New York's usury statute irrelevant.  "A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice of law rules." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  Here, the forum state is Maryland, and under Maryland's choice of law rules, the "contracting parties" may "specify in their contract that the laws of a particular State will apply in any dispute over the validity, construction, or enforceability of the contract."  *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 617 (2007).  The Loan Agreement specifies that Maryland law controls: It states that "the laws of the State of Maryland" "shall . . . govern[]" "this Agreement, all transactions it contemplates, the entire relationship between the parties, and all Claims . . . whether such Claims are based in tort, contract or arise under statute or in equity."  (ECF No. 3-1, at 7).[4]

---

[4]   There are two exceptions to Maryland's rule that a contract's choice-of-law provision controls.  *Jackson*, 398 Md. at 619.  The rule does not apply where (1) "the chosen state has no substantial relationship to the parties or the transaction and

Under Maryland law, a lender commits "[u]sury" by "charging . . . interest . . . in an amount which is greater than that allowed by" § 12, Subtitle 1 of Maryland's Commercial Code. *See* Md. Code Ann., Comm. Law § 12-101(m). While Subtitle 1 generally imposes a 6% interest cap, *see* Md. Code Ann., Comm. Law § 12-102, it also provides exceptions. For instance, a lender may charge interest "at any rate," Md. Code Ann., Comm. Law § 12-103(e)(1), on certain kinds of "commercial loans," including:

- "A commercial loan in excess of $15,000 not secured by residential real property," and

---

there is no other reasonable basis for the parties['] choice," or (2) "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* (internal quotations omitted). Defendants do not mention these exceptions, much less argue that the exceptions apply. Exception 1—the "substantial relationship" exception—does not apply because a state has a "substantial relationship" to the case as long as it is the "home of" one of the parties, *see id.* at 621, and SBFS is at home in Maryland. Exception 2—the "fundamental policy" exception—applies only where application of the parties' chosen state laws would "contravene a fundamental policy" of another state. *Id.* (internal quotations omitted). Defendants already sued SBFS in New York state court, raising many of the same theories they raise here—and the New York court held that New York law does not apply to this dispute because the Loan Agreement's choice-of-law provision is not "in contravention of public policy . . . within New York." (ECF No. 20-3, at 5 (internal quotations omitted)). Finally, even if New York law *did* apply, it seems that the Loan Agreement does not violate it. After considering similar arguments to those that Defendants raise here, the same New York court noted that it was "not convinced . . . that [SBFS] engaged in fraud" in part because "[t]he case law . . . does not suggest that the interest rate on the subject loan was usurious." (ECF No. 20-3, at 5).

- "A commercial loan in excess of $75,000 secured by residential real property."

Md. Code Ann., Comm. Law § 12-103(e)(1)(ii)-(iii). A "commercial loan" is one made "[s]olely to acquire or carry on a business or commercial enterprise." Md. Code Ann., Comm. Law § 12-101(c).

The Loan Agreement fits that exception. The Agreement is a "commercial loan" because it was made "[s]olely to . . . carry on a business," *see id.*—indeed, the Agreement itself states that the "proceeds of the requested Loan may be used for business purposes only" and cannot be used "for personal, family, or household purposes." (ECF No. 3-1, at 2); *see Sutherland v. Maryland Nat'l Bank*, No. HAR-90-2029, 1991 WL 111371, at *1-2 (D.Md. June 19, 1991) (granting a motion to dismiss a usury claim where a real estate broker had borrowed money to "to acquire a facility . . . which it planned to lease to various tenants," and holding that "no maximum interest rate" applied because the loan was "within the scope of [the borrower's] commercial real estate activities").

And while it is unclear from the pleading thus far whether the loan is "secured by residential real property," that ambiguity is not dispositive.[5] If the loan is "not secured by residential

---

[5] Defendants seem to argue that the loan is secured by residential real property because Defendant Yoel Bochner is a guarantor on the loan, and thus his "personal assets, including real and personal property, may be collected" if the debt goes unpaid. (ECF No. 22, at 8). On the other hand, SBFS asserts that "nothing in the [Agreement] . . . creates a security in Mr.

real property," then it may include "any" interest rate as long as the loan exceeds $15,000, which it plainly does. (ECF No. 3-1, at 2 ("Amount of Loan" is $127,000)). And if the loan *is* "secured by residential real property," then it can still include any interest rate as long as it exceeds $75,000. Because the loan amount is $127,000, the loan can include "any" interest rate either way. Md. Code Ann., Comm. Law § 12-103(e)(1). *See Sutherland*, 1991 WL 111371, at *1-2 (holding that Maryland law "impose[d] no maximum interest rate" on a commercial loan that was "not secured by residential real property" because the loan was for $556,000, which exceeds $15,000); *St. Annes Dev. Co., LLC v. Trabich*, No. WDQ-07-1056, 2008 WL 11363691, at *4 (D.Md. May 21, 2008) (holding that a commercial loan secured by residential real property could "not [be] usurious" because the loan was for $500,000, which exceeds $75,000).

Looking elsewhere in the Maryland Commercial Code, Defendants rely on § 12, Subtitle 10, which states that certain kinds of loans may not have an interest rate "in excess of 24 percent per year." Md. Code Ann., Comm. Law § 12-1003. (ECF No. 14, at 2). But Subtitle 10 does not apply—it governs only certain kinds of "closed end credit" provisions that are not involved in this case. Md. Code Ann., Comm. Law § 12-1001. Indeed, Subtitle 10 only applies

---

Bochner's residence, or even mentions Mr. Bochner's property." (ECF No. 23, at 8). This debate is beside the point.

where a lender "makes a written election" showing an intent "to make a loan under this subtitle." Md. Code Ann., Comm. Law § 12-1013.1(a)(2). By contrast, if a lender "fails" to make such an election, "the provisions of [Subtitle 10] do not apply." Md. Code Ann., Comm. Law § 12-1013.1(b)(2). Defendants do not allege that SBFS made a Subtitle 10 election. Indeed, after originally citing Subtitle 10's 24% interest cap in their counterclaim, Defendants neither mention Subtitle 10 in their opposition to SBFS' motion to dismiss nor respond to SBFS' assertion that it never made such an election. (ECF No. 20, at 11). Instead, Defendants vaguely assert that the loan contract "is clearly in violation of Maryland's usury law," while citing Subtitle 1's general 6% interest cap. (ECF No. 22, at 8 (citing Md. Code Ann., Comm. Law § 12-102)). That cap, as noted, is subject to an exception for certain commercial loans like the one here.

Defendants next argue that the loan contract "should be treated as a personal loan" rather than a "commercial loan" because Defendant Yoel Bochner serves as a guarantor on the loan, and thus "Mr. Bochner's personal assets . . . may be collected regardless of the status of the loan with Cavalry." (ECF No. 22, at 8). Maryland's usury law, however, defines a "commercial loan" based on the purposes for which the borrowed money will be used—not based on whether personal assets can be collected when the loan goes unpaid. Thus, Mr. Bochner's guarantor status is irrelevant, and

it does not matter whether SBFS may collect his personal assets to satisfy the debt. Either way, the loan was made "[s]olely to acquire or carry on a business or commercial enterprise"—and that is enough.  Md. Code Ann., Comm. Law § 12-101(c).

Defendants also assert, incorrectly, that the court ought not consider the terms of the Agreement *at all* in deciding the motion to dismiss because doing so requires "going beyond the four corners of the pleading."  (ECF No. 22, at 5).  In deciding a motion to dismiss, a court may rely on a document that is "integral to" the pleading under attack and "explicitly relied on" by the nonmoving party, as long as that party does not "challenge [the document's] authenticity."  *E.I du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).  While this rule usually applies to a document integral to a complaint in the context of a motion to dismiss that complaint, courts in this circuit regularly apply the same rule to documents integral to a counterclaim when deciding a motion to dismiss that counterclaim.[6]

---

[6] *See, e.g.*, *Kisano Trade & Invest Ltd. v. Winding Gulf Coal Sales, LLC*, No. 09-0804, 2010 WL 1904669, at *2 (S.D.W.Va. May 10, 2010) (considering a document "[a]attached to the Complaint" in ruling on a motion to dismiss a counterclaim because the document was "integral to and explicitly relied on" in the counterclaim and the counter-plaintiff did not challenge its authenticity) (internal quotations omitted); *Teras v. Wilde*, No. DKC 14-0244, 2015 WL 7008374, at *4 n.4 (D.Md. Nov. 12, 2015) (noting that courts are "permitt[ed] to consider documents attached to the motion to dismiss that are integral to the counterclaim and authentic").

The Loan Agreement was attached to SBFS' complaint, (ECF No. 3-1), it was "integral to" Defendants' counterclaim, and Defendants have "explicitly relied on" it. *E.I du Pont de Nemours*, 190 F.3d at 618.   Indeed, the usury theory at the core of Defendants' counterclaim rests on the interest rate listed in the Agreement.   And far from challenging the Agreement's authenticity, Defendants agree that the Loan Agreement attached to the Complaint is the contract they signed.   (ECF No. 14, at 1).

Finally, Defendants note that a court at this stage must view the "allegations in a light most favorable to Defendants[]," and argue that because they have alleged the Agreement is unenforceable, the court cannot consider the Agreement's "specific provisions" in deciding the motion to dismiss.   (ECF No. 22, at 5).   That argument similarly misunderstands the court's role.   At this stage, the court need only accept as true Defendants' "factual allegations," not their "legal conclusion[s]."   *Iqbal*, 556 U.S. at 678.   Defendants' assertion that the Loan Agreement is usurious—and thus unenforceable—is a legal conclusion, so it is "not entitled to the assumption of truth."   *Id.*

Indeed, the court *cannot* resolve this motion to dismiss without determining the legal question of whether—under the facts alleged by Defendants—the Agreement is usurious.   Answering that question requires considering the terms of the agreement. Defendants do not, of course, claim that the Agreement itself is

inauthentic, or that the loan contract they signed contained terms other than those in the contract attached to the complaint. Rather, Defendants agree with the *factual* premise that the Agreement reflects the contract they signed—they only disagree with the *legal* conclusion that the Agreement is not usurious. Nothing about that legal dispute prevents the court from considering the terms of the Agreement in resolving the motion to dismiss.[7]

Because Counts II, III, and IV of Defendants' counterclaim hinge on the incorrect argument that the Agreement is usurious, all three counts will be dismissed. Beyond that, Count III—which alleges "fraud," (ECF No. 14, at 3)—must be dismissed because it is improperly pled.  Under Federal Rule of Civil Procedure 9(b), allegations of fraud "shall be stated with particularity."  Thus, a party claiming fraud typically must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained

---

[7] In their opposition to SBFS' motion to dismiss, Defendants argue—for the first time—that their Counterclaim should not be dismissed because the Agreement "is an unconscionable contract of adhesion that was not negotiated at arms-length." (ECF No. 22, at 7).  But this unconscionability theory is mentioned nowhere in the Counterclaim itself, and "for the purposes of a motion to dismiss," a counter-plaintiff "is bound by her [counterclaim] and cannot amend it through her briefs." *Stahlman v. United States*, 995 F.Supp.2d 446, 453 (D.Md. 2014).  Thus, this new unconscionability theory cannot save the Counterclaim at this stage.

thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal citation omitted).

Defendants do not meet that standard. At most, they allege the "contents of the false representations," *id.*—that is, they allege that SBFS "represented . . . that [Defendants] would pay a legal interest rate on the loan." (ECF No. 14, at 3). But they do not mention when or where this statement was made, nor do they identify the person who made it. *See Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II*, Inc., 888 F.3d 696, 705 (4th Cir. 2018) (holding that a party did not plead fraud with sufficient particularity where it "broadly accused" the plaintiff organization of lying without "specify[ing] who" within that organization made the alleged statements). Because Defendants do not sufficiently plead the "who, what, when, where, and how of the alleged fraud," Count III "falls short of the applicable pleading standard" and will be dismissed. *Id.* (internal quotations omitted).

### 2. Count I: Declaratory Judgment

In Count I, Defendants claim that the Agreement is "usurious," and request that this court declare as much. (ECF No. 14, at 2). As explained above, the Agreement is not usurious and Defendants' usury arguments lack merit. However, while SBFS seeks to dismiss Count I under Rule 12(b)(6), "a motion to dismiss for failure to state a claim is not the appropriate means of resolving a claim

15

for declaratory relief." *Pruitt v. Alba Law Group, P.A.*, No. DKC 15-0458, 2015 WL 5032014, at *8 (D.Md. Aug. 24, 2015).   Indeed, the "test of the sufficiency of [a declaratory judgment claim] is not whether it shows that the [pleader] is entitled to the declaration of rights" that it requests, but "whether [the pleader] is entitled to a declaration at all." *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, No. DKC 09-0100, 2011 WL 856374, at *18 (D.Md. Mar. 9, 2011) (quoting *120 W. Fayette St., LLLP v. Mayor & City Council of Baltimore City*, 413 Md. 309, 355-56 (2010)).   And a declaration is appropriate where there is an "actual, ongoing controversy" between the parties—even if the party seeking declaratory relief is "on the losing side" of that dispute. *Pruitt*, 2015 WL 5032014, at *8 (internal quotations omitted). Thus, when one party seeks a declaratory judgment that "contravenes applicable law," and the other party moves to dismiss that claim, a court may construe the parties' motions as "competing cross-motions for a declaration in their favor" as to the ongoing controversy. *Id.* It may then issue a declaration in favor of the party that originally moved to dismiss. *Id.*[8]

---

[8] *See also* 22A Am.Jur.2d Declaratory Judgments § 228 (2015 supp.) ("A motion to dismiss is seldom an appropriate pleading in actions for declaratory judgments, and such motions will not be allowed simply because the plaintiff may not be able to prevail."); *Diamond v. Chase Bank*, No. DKC-11-0907, 2011 WL 3667282, at *5 (D.Md. Aug. 19, 2011) (construing a defendant's Rule 12(b)(6) motion to dismiss the plaintiff's declaratory judgment claim as a motion for a declaration in its favor).

The Declaration sought by Defendants "contravenes applicable law," so it will not be issued.  However, the parties' briefs show that there is an "ongoing controversy" regarding whether the Agreement is usurious.  Thus, the court will issue a declaration in SBFS' favor that the Loan Agreement is not usurious under Maryland law.

**B.   Motion to strike affirmative defenses.**

SBFS argues that Defendants' first five affirmative defenses are "based on usury," and thus should be stricken because the Agreement "cannot be usurious under Maryland law."  (ECF No. 20, at 7, 12).  Defendants' first affirmative defense is no doubt based on usury.  Less clear are the grounds for the other four defenses that SBFS has moved to strike.  In Defenses 2 and 5, the Defendants do not specifically reference "usury"—rather, they vaguely assert that the loan agreement is not legal or valid, without stating a legal theory underlying that assertion.  (ECF No. 13, at 2).  Defendants likewise do not mention usury in Defense 3; instead, they claim that "[t]he agreement at issue was entered into because of Plaintiff's fraud," without explaining which conduct Defendants believe to be fraudulent.  (ECF No. 13, at 2).  And in Defense 4, Defendants assert that SBFS "fails to state a claim for which relief may be sought."  (ECF No. 13, at 2).

### 1.   Affirmative Defense 1

In Defense 1, Defendants claim that "Plaintiff's claims are barred due to usury under both New York and Maryland law." (ECF No. 13, at 2).  This defense is meritless for the reasons explained above—the Agreement is not usurious under Maryland law, and New York law does not apply.  Defendants argue, however, that the motion should be denied because a motion to strike is a "drastic remedy," and courts "disfavor" striking affirmative defenses. (ECF No. 22, at 6-7 (quoting *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)).

It is true that motions to strike are "generally viewed with disfavor." *Waste Mgmt.*, 252 F.3d at 347.  But that is because a motion to strike is "often sought by the movant simply as a dilatory tactic." *Id.* (internal quotation omitted).  And despite this general disfavor, the Fourth Circuit has held that an affirmative defense "should be" stricken when it "might confuse the issues in the case" and "would not, under the facts alleged, constitute a valid defense to the action." *Id.* (internal quotation omitted).  Indeed, Rule 12(f) permits a court to strike an affirmative defense simply because it is "insufficient," and a motion to strike an insufficient defense is the "appropriate tool when the parties disagree only on the legal implications to be drawn from uncontroverted facts." *Wright & Miller* § 1381.  As other federal courts have held, a motion to strike an insufficient

affirmative defense "should be granted if it appears to a certainty" that the defense would fail on the merits "despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." *Operating Eng'rs Loc. 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991)).  Applying these principles, the Fourth Circuit found that a district court properly struck an affirmative defense simply because, under the uncontroverted "facts alleged," the defense had "no basis" on the merits. *Waste Mgmt.*, 252 F.3d at 347.

The underlying facts are undisputed—the parties agree that they signed the Loan Agreement, and they do not dispute what that Agreement says.  They only disagree about the legal implications of that Agreement.  Thus, while motions to strike are "*generally* viewed with disfavor," this is precisely the kind of case in which a motion to strike is appropriate: A case in which a defense is not legally "valid" based on "the [uncontroverted] facts alleged." *Id.* (emphasis added).

What is more, where—as here—a defendant concedes the authenticity of a contract and raises an affirmative defense to prevent enforcement of that contract, several federal courts have held that a district court may strike that defense as insufficient if the terms of the contract foreclose the possibility that the defense could succeed on the merits.  For instance, in *Operating*

*Eng'rs Loc. 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045
(6th Cir. 2015), a Pension Fund sued an employer, arguing that the
employer did not make contributions that were required by the
parties' collective bargaining agreement.  The employer raised the
affirmative defense of equitable estoppel, the district court
denied the Fund's motion to strike that defense, and the United
States Court of Appeals for the Sixth Circuit reversed.  *Id.* at
1050.  The Sixth Circuit found that the "explicit terms" of the
collective bargaining agreement made it impossible for the
Employer to prove one of the elements of its estoppel defense.
*Id.* at 1056.  Thus, because the agreement necessarily "defeat[ed]
any claim" of equitable estoppel the Employer could make, the
estoppel defense should have been stricken because it could not
"constitute a valid defense."  *Id.*

Similarly, in *Hemlock Semiconductor Operations, LLC v.
SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692 (6th Cir. 2017), a
seller sued a buyer for breach of contract and the buyer raised
the affirmative defense that the contract was invalid because it
violated antitrust law.  *Id.* at 697.  The Sixth Circuit held that
the district court was right to strike this defense for "lack[ing]
merit."  *Id.* at 697, 702.  To reach this conclusion, the court
conducted a "review of the contract" and concluded that it "[did]
not facially violate" antitrust law.  *Id.* at 701.  Here, a "review
of the contract" shows that the Loan Agreement's interest rate

"[does] not facially violate" Maryland's usury law, *see id.*, and that the terms of the Loan Agreement "defeat any [usury] claim" that Defendants could make, *see Operating Eng'rs*, 783 F.3d at 1056.

Seeking to evade this conclusion, Defendants seem to argue that it is not enough for a defense to be meritless. Rather, they note that courts in this district have previously stated that a motion to strike should "ordinarily" not be granted without a "demonstration of some prejudice as a result of the inclusion of the challenged affirmative defense." (ECF No. 22, at 6 (citing *EEOC v. Spoa, LLC*, No. CCB-13-1615, 2014 WL 47337 (D.Md. Jan. 3, 2014)). Defendants likewise argue that SBFS has not shown that a denial of its motion would cause prejudice.

Courts in this district have in some cases said that a showing of prejudice is "ordinarily" required before a motion to strike can be granted. *Spoa*, 2014 WL 47337, at *6; *see also Asher & Simmons, P.A. v. j2 Global Can., Inc.*, 965 F.Supp.2d 701, 705 (D.Md. 2013) (noting that prejudice is "generally" required). Defendants, however, cite no binding authority to support the proposition that a showing of prejudice is absolutely mandatory in every case. And in practice, courts sometimes strike an affirmative defense simply because it has no chance of success on the merits, or because the defendant has not alleged sufficient factual support, without separately requiring a showing of prejudice. Indeed, the Fourth Circuit itself affirmed a district

court's decision to strike an affirmative defense simply because the defense had "no basis" and was unsupported by "case law," without any consideration of prejudice at all. *See Waste Mgmt.*, 252 F.3d at 347. Similarly, in the very case that Defendants cite to support their assertion that prejudice is required, the court struck an affirmative defense solely because it had "no factual basis" on the uncontroverted facts alleged—again, without any consideration for whether striking that defense would reduce prejudice. *Spoa*, 2014 WL 47337, at *4.[9] Any purported lack of prejudice is thus not dispositive.[10]

---

[9] *See also Long v. Welch & Rushe, Inc.*, 28 F.Supp.3d 446, 463 (D.Md. 2014) (striking an affirmative defense because it was "inapplicable" to the case and lacked "any factual bases," without consideration of prejudice); *Haley Paint Co. v. E.I. DuPont De Nemours and Co.*, 279 F.R.D. 331, 336 (D.Md. 2012) (striking an affirmative defense because it was "improper as a matter of law" and could not succeed under Fourth Circuit precedent, without consideration of whether striking that defense would reduce prejudice to the plaintiff).

[10] SBFS argues that it would suffer prejudice from a denial of its motion because it believes that keeping an "unsupported defense" in the case "would cause increased time and expense of trial, including the possibility of extensive and burdensome discovery." (ECF No. 23, at 11). It is unclear what additional discovery could be required by Defendants' usury-based defense—all facts relevant to that theory are seemingly already known. That said, as discussed later in this opinion, the legal theory underlying Affirmative Defenses 2 and 5 is unclear. And another court in this district has found that a plaintiff may be prejudiced by being forced to engage in discovery related to defenses that "lack of any sort of factual detail." *Jones v. Aberdeen Proving Ground Federal Credit Union*, No. ELH-21-1915, 2022 WL 2703825, at *6 (D.Md. July 12, 2022); *see also Villa v. Ally Fin., Inc.*, No. 13-cv-953, 2014 WL 800450, at *4 (M.D.N.C. Feb. 28, 2014) (holding that a plaintiff would be prejudiced if the court did not strike

### 2.   **Affirmative Defenses 2 and 5**

In Defenses 2 and 5, Defendants assert that the Agreement is not "legal" or "valid," and thus that they "are not obligated to perform" under the Agreement (Defense 2), and that SBFS' claim "is barred due to the unjust enrichment doctrine" (Defense 5).  (ECF No. 13, at 2).  If Defendants' sole basis for Defenses 2 and 5 is their usury theory, then these Defenses should be stricken for the same reason that Defense 1 will be stricken.  However, these Defenses do not *necessarily* rest on usury alone.  Neither Defense calls the Agreement "usurious" or mentions usury at all.  Rather, Defendants simply label the Agreement as illegal and invalid without explaining why they believe it to be so.  And in their opposition to SBFS' motion to dismiss, Defendants argue that the Agreement is "unconscionable" and "one-sided," which suggests that Defendants may intend to argue that the Agreement is invalid for reasons besides usury.  (ECF No. 22, at 7).

If Defenses 2 and 5 are meant to raise a theory of contract invalidity beyond usury, then they must be stricken because they fail to meet the pleading standards of Rule 8, which provides the "[g]eneral [r]ules of [p]leading" in federal court.  *See Wright &*

---

"unsupported" affirmative defenses in part because the plaintiff would "have to use up some of her limited discovery requests and time to figure out exactly what the factual bases are" for those defenses) (internal quotations omitted).  Thus, even if prejudice is required, that requirement would likely be satisfied here, at least with respect to Affirmative Defenses 2 and 5.

*Miller* § 1380 (noting that defenses can be stricken for failing to meet Rule 8's pleading standards because "Rule 12(f) . . . is designed to reinforce the requirement[s] in Rule 8[]").  Under Rule 8(b), "a party must . . . state in short and plain terms its defenses to each claim asserted against it."  Fed. R. Civ. P. 8(b)(1)(a).  Rule 8(c) states that a party "must affirmatively state any . . . affirmative defense."  Fed. R. Civ. P. 8(c)(1).

Federal courts currently disagree over what these standards mean in practice.  Many courts—including a majority of the courts in this district, *see Jones*, 2022 WL 2703825, at *4 (collecting cases)—conclude that an affirmative defense must be plead with the same detail as an affirmative claim under Rule 8(a), meaning that it must meet the "plausible pleading" standard established by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Other courts in this circuit conclude that the *Twombly-Iqbal* standard does *not* apply to affirmative defenses, and thus that a defense is sufficiently plead as long as it provides the plaintiff "fair notice of the nature of the defense"—a more lenient pleading standard that predates *Iqbal* and *Twombly*.  *See, e.g.*, *Guessford v. Pa. Nat. Mut. Cas. Ins. Co.*, 918 F.Supp.2d 453, 468 (M.D.N.C. Jan. 16, 2013).  The court need not resolve this dispute because Affirmative Defenses 2 and 5 fail even under the more lenient pre-*Twombly-Iqbal* pleading standard.

24

Before *Twombly* and *Iqbal*, the Fourth Circuit held that an affirmative defense may be stated in "general terms," as long as it is plead with sufficient detail to "give[] plaintiff fair notice of the nature of the defense." *Clem v. Corbeau*, 98 Fed.App'x 197, 204 (4th Cir. 2004).[11]  Other federal courts applied a similar fair notice rule.  *See, e.g.*, *Woodfield v. Bowman*, 193 F.3d 354, 362 (3d Cir. 1999).[12]

The Fourth Circuit has said that a defendant provides "fair notice" when its answer "encapsulat[es] the elements" of the affirmative defense it seeks to raise.  *Clem*, 98 Fed.App'x at 204. Another federal appellate court held that a defendant raising a state law affirmative defense to the enforcement of a contract may provide fair notice by stating "the name" of the state law defense in its answer, as long as that identification allows the plaintiff

---

[11] *See also Francisco v. Verizon South, Inc.*, No. 09-cv-737, 2010 WL 2990159, at *6 (E.D.Va. July 29, 2010) ("Prior to the Supreme Court's decisions in *Twombly* and *Iqbal*, the United States Court of Appeals for the Fourth Circuit held that general statements of affirmative defenses were sufficient provided they gave plaintiffs fair notice of the defense."); *Wright & Miller* § 1380 (noting that a court may "grant a motion to strike [a] defense[] that [is] pleaded with so little detail that [it] fail[s] to provide sufficient notice to the opposing party").

[12] Several district courts in this circuit that have declined to apply *Twombly-Iqbal* to affirmative defenses have continued to apply *Clem*'s "fair notice" standard instead.  *See, e.g.*, *Guessford*, 918 F.Supp.2d at 468; *Villa*, 2014 WL 800450, at *2; *Tippman Eng'g, LLC v. Innovative Refrigeration Sys., Inc.*, No. 19-cv-87, 2020 WL 1644985, at *2 (W.D.Va. Apr. 2, 2020); *Grant v. Bank of America, N.A.*, No. 13-cv-342, 2014 WL 792119, at *4 (E.D.Va. Feb. 25, 2014).

"to identify" which contract defense the defendant intends to raise. *Woodfield*, 193 F.3d at 362. Thus, while *Twombly* and *Iqbal* require a pleader to do more than simply name a legal theory and restate the elements, a defendant pleading an affirmative defense can generally satisfy the pre-*Twombly-Iqbal* fair notice standard by identifying the name of that defense under state law, or by at least stating the elements of that defense in its answer.

Defendants do not clear that low bar here. Maryland law provides several affirmative defenses to the enforcement of a contract, including "duress, coercion, mistake, undue influence, . . . incompetence[,]" and "unconscionability." *Cannon v. Cannon*, 384 Md. 537, 554-55 (2005).[13] In their Answer, Defendants neither state the "name" nor list the elements for any of these defenses—rather, they simply claim the contract is invalid without explaining why they believe it to be so. What is more, each of these defenses—when successful—have the effect of "invalidat[ing] the contract." *Id.* So where—as here—a defendant merely alleges

---

[13] Maryland courts do not refer to these defenses as "affirmative defenses." However, under Maryland law, a defendant "bears the burden" of proving one of these defenses in order avoid liability after a plaintiff claiming breach of contract proves its "prima facie case." *Cannon*, 384 Md. at 555. So each of these contract defenses functions as an affirmative defense, even if Maryland courts have not labelled them as such. *See* Black's Law Dictionary (8th ed. 2004) (defining "affirmative defense" as "a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claims, even if all the allegations in the complaint are true").

that a contract is invalid without providing any added detail, the plaintiff has no way to identify which contract defense the defendant intends to raise.[14]

Finally, when an affirmative defense is stricken as insufficient, the defendant "should normally be granted leave to amend" its answer and fix any pleading deficiencies. *See Long*, 28 F.Supp.3d at 463 (D.Md. 2014) (internal citations omitted).  Thus, Defendants will have fourteen days to move for leave to amend the answer and clarify the contract defenses they seek to raise and to add the allegations necessary to plead those chosen defenses sufficiently without relying on usury.

---

[14]   *See also Heller Financial, Inc. v. Midwhey Powder Cor., Inc.*, 883 F.2d 1286, 1294-95 (7th Cir. 1989) (applying pre-*Twombly-Iqbal* pleading standard where a defendant raised several affirmative defenses based on the assertion that the contract under which plaintiff sued was "unenforceable," and holding that the defenses should be stricken because they contained "nothing but bare bones conclusory allegations" and failed to "allege the necessary elements"); *Topline Sols., Inc. v. Sandler Sys., Inc.*, No. L-09-3102, 2010 WL 2998836, at *2 (D. Md. July 27, 2010) (noting that, "even before *Twombly* and *Iqbal*," certain defenses "were consistently struck when pled without reference to some facts"); *Tippman Eng'g*, 2020 WL 1644985, at *2 (noting that under the pre-*Twombly-Iqbal* fair notice standard, "bare bones conclusory assertions . . . provide[] insufficient notice of the nature of the defense") (internal citation omitted); *Villa*, 2014 WL 800450, at *2 (to "survive a motion to strike" under the pre-*Twombly-Iqbal* fair notice standard, a party must offer more than a "bare-bones conclusory allegation which . . . does not indicate how the [defendant's legal] theory is connected to the case at hand") (internal quotations omitted); *Staton v. North State Acceptance, LLC*, No. 13-cv-277, 2013 WL 3910153, at *2-3 (M.D.N.C. July 29, 2013) (holding that, even where "*Iqbal/Twombly* does [not] apply," an affirmative defense must "[a]t a minimum" provide "more than conclusions") (internal citation omitted).

### 3.   Affirmative Defense 3

Affirmative Defense 3 alleges that Defendants signed the Agreement "because of [SBFS'] fraud." (ECF No. 13, at 2). Fraud is an affirmative defense under Maryland law, *see Cannon*, 384 Md. at 555, but an affirmative defense alleging fraud must meet the same particular pleading standard as a fraud counterclaim. *See Just Born II*, 888 F.3d at 704-05. Because the Answer provides no more detail than the Counterclaim regarding Defendants' fraud allegations, Affirmative Defense 3 will be stricken for the same reason that Count III of the Counterclaim will be dismissed. Defendants will likewise have fourteen days to move for leave to amend the answer and add the allegations necessary to plead with the required particularity a fraud defense that does not rest on usury.

### 4.   Affirmative Defense 4

Finally, Affirmative Defense 4 alleges that SBFS "fails to state a claim for which relief may be sought." (ECF No. 13, at 2). The assertion that a plaintiff has failed to state a claim is "not an affirmative defense at all." *Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC*, 752 F.Supp.2d 721, 727 (W.D.Va. 2010). An affirmative defense is an argument that—if successful—"will defeat the plaintiff's . . . claims" even if the plaintiff proves its *prima facie* case. *See* Black's Law Dictionary (8th ed. 2004) (defining "affirmative defense"). By arguing that

SBFS failed to state a claim, Defendants merely "assert[ed] that [SBFS] cannot establish a *prima facie* case"—they did not raise an affirmative defense.  *See Clark v. Milam*, 152 F.R.D. 66, 73 (S.D.W.V. 1993).  Affirmative Defense 4 is thus "superfluous," and it will be stricken.  *Id.; see also Odyssey Imaging*, 752 F.Supp.2d at 727 (W.D.Va.2010) (striking purported affirmative defense which asserted that the "complaint fails to state a cause of action" because it was "not an affirmative defense[] at all"); *Malibu Media, LLC v. Popp*, No. 14-cv-700, 2015 WL 10937405, at *3 (E.D.Va. April 13, 2015) (same).

## IV.  Conclusion

Because the parties' Loan Agreement cannot be usurious under Maryland law, SBFS' motion to dismiss Defendants' counterclaims will be granted as to Counts II, III, and IV.  As to Count I, the court will declare that the Loan Agreement cannot be usurious under Maryland law.  SBFS' motion to strike Defendants' affirmative defenses will also be granted because Defendants' usury theory is legally insufficient and because the remaining defenses are insufficiently pled.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
